UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBIN KNIFFEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE: 15-CV- |
| | ) | |
| SOUTHWEST AIRLINES | ) | PLAINTIFF REQUESTS JURY TRIAL |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The Plaintiff, ROBIN KNIFFEL, by her Attorney, Greg Roosevelt, for her Complaint against the Defendant, Southwest Airlines states as follows:

1. The Plaintiff, Robin Kniffel, is a resident of Glen Carbon, Madison County, Illinois and is a citizen of Illinois and resides in the Southern District of Illinois.

2. Southwest Airlines operates its flight operations out of the State of Illinois including the Chicago, Illinois Midway Airport.

3. The Plaintiff, Robin Kniffel, had been employed as a flight attendant for the Defendant, Southwest Airlines since December of 2006.

4. The Plaintiff, Robin Kniffel, was based out of the Chicago, Illinois, Midway Airport. Kniffel would commute to Midway Airport from her home in Glen Carbon. The Plaintiff would check schedules and would be notified of reserve duty from her Glen Carbon home as part of her regular duties for the Defendant. Plaintiff would utilize computer access from Glen Carbon, Illinois to be informed of the schedule and reserve times. Defendant knew Plaintiff performed these duties from her home.

5. All of the medical witnesses in this matter are in the Southern District of Illinois.

6. On August 29, 2013 the Plaintiff was off duty at her Glen Carbon home.

7.     On August 26, 2013 Kniffel was stung by a bee and suffered an allergic reaction. Kniffel used her EpiPen and was taken to the emergency room at Anderson Hospital in Maryville, Illinois where she was given additional medication and prescribed prednisone and Benadryl. Those prescriptions were filled. Kniffel's reaction to bee stings includes elevated blood pressure, hives, difficulty breathing, and swelling of the tongue.

8.     Kniffel had called in ill from her home in Glen Carbon on August 26, 2013 in that she had kidney problems, suffered an extended abdomen, lack of bladder control, and was in pain. Kniffel was off work due to this illness for August 26, 27, and 28.

9.     Exploratory surgery was done on Kniffel under general anesthesia on August 27 as an inpatient at St. Anthony's Hospital in Alton. Following that surgery Kniffel remained on medications including prednisone, Benadryl, EpiPen, and oxybutynin for the kidney condition. Kniffel was suffering wooziness from the effects of the anesthesia.

10.    Kniffel was scheduled to be off work on August 29, 2013. She suffered a second bee sting on the afternoon of August 29. Kniffel's sister had come to pick her up to take her to get her prescriptions filled when she was stung outside her front door. Kniffel immediately used her EpiPen and called her doctor who instructed her to take prednisone and Benadryl and come to the ER if symptoms worsened.

11.    Shortly after 3:00 p.m. Kniffel entered the Southwest Airlines employee website to check flights the next morning to find availability to commute for her reserve duty which was to commence at 10:00 a.m. which required her to be within two hours of Chicago's Midway Airport on August 30, 2013. Kniffel was working to make a decision on her physical ability to work the next day.

12.     Kniffel was physically and mentally disabled and could not make a decision regarding working and her availability.  Kniffel had not slept in 27 hours due to the effects of the medications.  Shortly after 3:00 p.m. Kniffel sat down on her couch, became unconscious and did not awaken until 10:00 a.m. on August 30.  Kniffel immediately called Southwest to report her illness and was granted sick days on August 30 and 31.

13.     Subsequently, on or about December 16, 2013 the Plaintiff was ordered to attend a fact finding meeting and ordered to explain why she was not within two hours of Midway Airport home base on August 30, 2014 at 10:00 a.m.  Kniffel provided her doctor's note showing that she did visit a doctor and had been sick and unable to work on August 30.  Kniffel explained the circumstances of the bee sting and illness.  Kniffel cooperated with the Defendant with any requests for additional request for medical documentation or information.  The Plaintiff was then terminated by Southwest Airlines in a letter dated December 20, 2013.

14.     In a hearing following that termination, the manager, David Kissman, who was in charge of base operation at Chicago's Midway Airport for Southwest Airlines stated that prior to making his determination to discharge Plaintiff that he considered her job performance and work history.  Kissman characterized Kniffel's attendance as poor.  Kissman stated that he looked at the previous years, 2010 through 2013 and Kniffel was absent between 20 to 30 percent of her scheduled work hours.  Kissman cited doctor's notes, intermediate leave, lengthy worker's compensation leaves, and medical leaves including FMLA leave time, in making his determination that the average lost time was between 20 to 30 percent over three years.  Kissman admitted that these leaves were all excused and that Kniffel had never been cited under company policy for absenteeism during that time.  Kissman admitted that he used these absences including worker's compensation leave time and FMLA leave time in making the decision to terminate.

15.     The Plaintiff has been issued a Right to Sue letter by EEOC issued on August 14, 2014 which is attached and made a part by reference.

## Count I
## Retaliatory Discharge for taking FMLA Leave

The Plaintiff, ROBIN KNIFFEL, for Count I of her Complaint reallges paragraphs 1 through 15 of her Complaint and further states:

16.     The Plaintiff was then discriminated against and retaliated against for having taken FMLA leave time in 2010, 2011, and 2012 when Plaintiff was ill on various occasions. The Plaintiff, in fact, had just called in sick on August 26, 27, and 28 with a kidney problem which necessitated surgery on August 27 and had suffered bee stings on August 26 and August 29. The Defendant retaliated against the Plaintiff for taking FMLA leave time by discharging her.

17.     The Defendant wrongfully discharged the Plaintiff and as a result Plaintiff has lost significant wages, retirement benefits, and suffered severe emotional distress with damages exceeding $300,000.

WHEREFORE, the Plaintiff seeks damages against the Defendant in an amount exceeding $300,000.

## Count II
## Illinois Workers Compensation Retaliatory Discharge

The Plaintiff, ROBIN KNIFFEL, for Count II of her Complaint reallges paragraphs 1 through 15 of her Complaint, paragraphs 16 and 17 of Count I and further states:

18.     The Plaintiff was then discriminated against and retaliated against for having taken FMLA leave time in 2010, 2011, and 2012 when Plaintiff was ill on various occasions. The Plaintiff, in fact, had just called in sick on August 26, 27, and 28 with a kidney problem

which necessitated surgery on August 27 and had suffered bee stings on August 26 and August 29. The Defendant retaliated against the Plaintiff for taking FMLA leave time by discharging her.

19.      The Defendant wrongfully discharged the Plaintiff and as a result Plaintiff has lost significant wages, retirement benefits, and suffered severe emotional distress with damages exceeding $300,000.

WHEREFORE, the Plaintiff seeks damages against the Defendant in an amount exceeding $300,000.

**Count III**
**Intentional Infliction of Emotional Distress Claim**

The Plaintiff, ROBIN KNIFFEL, for Count III of her Complaint reallges paragraphs 1 through 15 of her Complaint, paragraphs 16 and 17 of Count I, paragraphs 18 and 19 of Count II and further states:

20.      The Defendant wrongfully discharged the Plaintiff knowing that she was in a weakened physical condition having suffered a kidney condition with surgery and two bee stings to which she had a severe allergic reaction in the four days prior to her duties on August 30, 2013. The Defendant knew it had complete and total control over the Plaintiff. The Defendant knew it would cause the Plaintiff severe and profound emotional distress when it made the decision to discharge her. The Plaintiff had invested years of service to the Defendant and had a career and family to support as a single parent. The Defendant would reasonably have known that its conduct in the matter would cause profound emotional distress and it did.

21.      The Defendant wrongfully discharged the Plaintiff and as a result Plaintiff has lost significant wages, retirement benefits, and suffered severe emotional distress with damages exceeding $300,000.

WHEREFORE, the Plaintiff seeks damages against the Defendant in an amount exceeding $300,000.

Respectfully submitted,

/s/ Greg Roosevelt
Greg Roosevelt, #02375427
Roosevelt Law Office
610 St. Louis Street
Edwardsville, IL 62025
618-656-9160
gregroosevelt@gmail.com